# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

LESLIE WASHINGTON,

      Plaintiff,

*v.*

JOHN DOE, Chief, Brownstown Police
Dep't; JOHN DOE, Officers, Brownstown
Police Dep't; BURKS, Correctional Officer,
Wayne County;[1] JOHNSON, Sergeant, Wayne
County Jail; MRS. CHUBBS, Correctional
Officer, Wayne County Jail; MRS. COLEMAN,
Correctional, Wayne County Jail; MRS. JOHNSON,
Correctional Officer,[2] Wayne County Jail; MRS.
KINDRO, Correctional Officer, Wayne County Jail;
MRS. MEARS, Correctional Officer, Wayne
County Jail; JOHN DOE, Officers, United States Marshal;
DAVID SHEPARDSON, Editor, Detroit Press
Newspaper; JOHN DOE, Director, Detroit, Press
Newspaper; TERRY BOOTH, Director; JOHN DOE,
Investigators; MR. LEMISCH, Assistant
United States Attorney; JENNI VAN BUREN,
Warden; JANE DOE, Director; S. BARRONE, Mrs.,[3]
UNITED STATE OF AMERICA,[4]

      Defendants.

CASE NO. 04-CV-10352

DISTRICT JUDGE DAVID LAWSON
MAGISTRATE JUDGE CHARLES E. BINDER

---

[1]Defendant Burks, Wayne County Officer, was erroneously omitted from the caption and terminated from the case. Although the previous Report recommended the complaint be served on Mrs. Burks (Dkt. 32 at 7,) the Order adopting the Report in its entirety mistakenly omitted Mrs. Burks (Dkt. 33), and the resulting Order to Correct Case Caption mistakenly terminated her from the case. (Dkt. 55.) Since she was terminated due to a mere clerical error, she is included in the caption.

[2]There has been some confusion because the earlier R&R suggested that Defendant Johnson be served, without specifying which or both of the potential "Johnsons" should be served. (Dkt. 32.) The Order adopting that R&R specifically called for service to be made on both Sergeant Johnson and Deputy (Officer) Johnson. (Dkt. 33.) Accordingly, an Order on Motion Requesting Clarification was filed on November 28, 2007, directing the Marshals to serve process on Officer Johnson. (Dkt. 81.) Therefore, Officer Johnson remains a party to this suit.

[3]Mrs. Barrone was originally identified as Mrs. Bagne but her name was changed in the caption by an Order to Correctly Identify Defendant filed September 11, 2007. (Dkt. 55.)

[4]Defendant United States of America was substituted for Assistant United States Attorney Daniel Lemisch on August 29, 2007, as to all tort claims. (Dkt. 49.)

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON**
**DEFENDANT DAVID SHEPARDSON'S MOTION TO DISMISS,**
**DEFENDANT LEMISCH'S MOTION TO DISMISS,**
**DEFENDANT LEMISCH'S MOTION TO DISMISS OR**
**FOR SUMMARY JUDGMENT,**
**DEFENDANT TERRY BOOTH'S AMENDED MOTION TO DISMISS,**
**DEFENDANT VAN BUREN'S MOTION TO DISMISS,**
**AND DEFENDANTS CHUBBS, COLEMAN, MRS. JOHNSON, KINDRO, AND**
**MEARS' MOTION TO DISMISS**
(Dkts. 52, 53, 54, 62,[5] 67, 71[6])

## I.     RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the motions to dismiss or for summary judgment be **GRANTED** as to Defendants United States, Shepardson, Lemisch, Booth, and Van Buren, and that the claims against them be dismissed with prejudice.  **IT IS FURTHER RECOMMENDED** that the motion to dismiss or for summary judgment brought by the remaining Wayne County Defendants be **DENIED,** as I conclude that they were properly served.

## II.     REPORT

### A.     Introduction & Procedural History

Plaintiff Leslie Washington is a federal prisoner who is currently incarcerated at the Federal Medical Center in Lexington, Kentucky.  In December 2004, Plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  The complaint states that the events giving rise to her cause of action occurred at the Wayne County Jail in Detroit, Michigan.  (Compl. ¶ 2.)  The 14-count

---

[5]This motion amended a previously-filed motion to dismiss. (Dkt. 58.)  Since the amended motion completely replaces the previously filed motion, only the amended motion will be discussed.

[6]This motion was originally given docket number 69, but due to a filing error, was refiled; therefore, this Report will only address the corrected filing found at docket number 71.

126-paragraph complaint originally named 49 defendants and alleges a number of horrific events which Plaintiff claims were part of defendants' conspiracy to have her "accidentally eliminated or murdered." (Compl., Dkt. 7 ¶ 48.) On April 18, 2005, Plaintiff "supplemented" the Complaint beginning at paragraph 127. (Dkt. 18.)

On February 24, 2005, United States District Judge David M. Lawson referred all pretrial matters to the undersigned magistrate judge. (Dkt. 5.) On February 28, 2005, Plaintiff's application to proceed without prepayment of fees was granted pursuant to the *in forma pauperis* statute. *See* 28 U.S.C. § 1915(a)(1). After screening the *pro se* complaint pursuant to 28 U.S.C. §§ 1915A(b), 1915e(2)(B), and 42 U.S.C. § 1997e(c)(1), a Report and Recommendation ("R&R") was filed on March 24, 2005, suggesting that the case be dismissed pursuant to 42 U.S.C. § 1997e(a) because Plaintiff had failed to satisfy her burden of demonstrating exhaustion of administrative remedies at the time of filing a prisoner civil rights complaint. (Dkt. 8.)

On April 18, 2005, in an apparent attempt to cure the fatal defect of the complaint as brought to light by the R&R, Plaintiff submitted documents that were docketed as an "amended complaint," but which consisted of 104 pages of grievance documentation and supplemental paragraphs to be inserted into the original complaint alleging exhaustion of administrative remedies. Plaintiff then filed objections to the R&R on May 9, 2005. (Dkt. 20.)

On January 22, 2007, the United States Supreme Court decided the case of *Jones v. Bock*, ___ U.S. ___, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007), which significantly altered the procedure in this circuit for handling prisoner civil rights cases with respect to the exhaustion of administrative remedies. On February 5, 2007, the R&R was rejected and the case was returned to the undersigned for reconsideration in light of the new rules laid down by the Supreme Court. (Dkt. 28.) On May 29, 2007, the undersigned recommended that the amended complaint be

dismissed in part and that R&R was adopted on July 6, 2007. (Dkt. 32, 33.) As a result, a number of Defendants were terminated from the case and an Order to Correct Case Caption was filed on July 10, 2007. (Dkt. 35.) In addition, the allegations contained in paragraphs 44 through 70 of the amended complaint were found to be barred by the statute of limitations and were dismissed. Defendant Officer Johnson filed a motion to dismiss in lieu of filing an answer and an R&R issued recommending that this motion be denied. This R&R is presently awaiting review. (Dkts. 85, 87.)

Starting with paragraph 71 of the complaint, Plaintiff alleges the following claims against the following individual defendants, all of which allegedly occurred after November 29, 2001: Defendant Sergeant Johnson purposely placed an inmate who was an enemy of Plaintiff in her cell (¶ 71); Defendant Deputy Chubbs kept her locked down and refused her showers, clean bed linens, a change of clothes, or any time out of her cell (¶ 73); Defendant Chubbs watched while another inmate attacked Plaintiff and then refused to allow Plaintiff to make a report or get medical care (¶ 74); Defendant Officers Mears, Burks, Chubbs, Kindro, and Johnson would slide her food under her cell door which had dried blood, feces, and roaches on it which contaminated her food (¶ 76); Defendant Mears flicked the lights in Plaintiff's cell on and off hundreds of time and blasted loud music in her cell (¶ 77); on one of the coldest days of the year, Defendant Mears gave Plaintiff only a garbage bag to keep warm, telling her untruthfully that they were out of bed linens and blankets (¶ 79); Defendant Coleman threatened her (¶ 80); Defendants Kindro and Johnson threw away her mail (¶ 81); Defendant Coleman forced her to sleep on the ground in bugs and filth (¶ 82); Defendant Kindro placed a dangerous inmate in Plaintiff's cell despite the fact that the inmate stated she wanted to kill Plaintiff and the inmate attacked and severely injured Plaintiff (¶ 84); Defendant David Shepardson, editor of the "Detroit Press," published an article about Plaintiff that slandered and defamed her character (¶ 86); Defendant FBI Agent Terry Booth falsified evidence

used against Plaintiff at trial and slandered Plaintiff in court (¶ 87); Defendant Lemish, a federal prosecutor, used evidence he knew to be false against Plaintiff and slandered her in court (¶ 88); Defendant Warden Van Buren retaliated against her for filing grievances (¶ 89); Defendant Jane Doe (director of R&D at FCI Danbury and Defendant Bagne ("R & D Property Officer"), discarded Plaintiff's property and wasted Plaintiff's money by refusing to allow Plaintiff to transfer all of her property (¶ 95).

The Defendant United States of America filed a Notice of Substitution as the proper federal Defendant with respect to all tort claims filed against Defendant Lemisch, 28 U.S.C. § 1346(b), i.e., slander and defamation. (Dkt. 49.)

Defendants have filed motions to dismiss or for summary judgment (Dkts. 52, 53, 54, 62, 67, 71), Plaintiff has responded (Dkts. 92, 93, 94, 57), and Defendants have replied. (Dkts. 98, 101, 103.) Upon review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), these motions are ready for Report and Recommendation on the pleadings without oral argument.

## B.    Overview of Parties' Arguments

Defendant United States of America ("U.S.") contends that Plaintiff has alleged that Defendant Lemisch, an Assistant United States Attorney ("AUSA"), committed the tort of defamation but has failed to comply with the Federal Tort Claims Act's ("FTCA") requirement, *see* 28 U.S.C. § 2675(a), that she first present her claim to the appropriate federal agency and be denied relief by that agency before filing a lawsuit. (Dkt. 54 at 2-3.) Defendant U.S. further argues that this defect cannot be waived nor can the case be held in abeyance because it is a jurisdictional prerequisite. (Dkt. 54 at 2-3.) Therefore, Defendant U.S. contends that any tort claim against the U.S., the defamation (slander and libel) claim, and the U.S. as a party should be dismissed from this suit. (Dkt. 54 at 3.)

Defendants Lemisch and Booth argue that Plaintiff's claims are not cognizable because they challenge the validity of her conviction (Lemisch, Compl. ¶ 88, false evidence, slander; Booth, Compl. ¶ 87, false evidence and statements in court) and thus, are barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). (Lemisch, Dkt. 53 at 7-8; Booth, Dkt. 62 at 7.) Defendants Lemisch, Booth, and Van Buren further argue that Plaintiff has failed to indicate that they are being sued in their individual capacities, it is therefore presumed to be a suit brought in their official capacities, and thus, the suit is barred by Eleventh Amendment or sovereign immunity. (Lemisch, Dkt. 53 at 8-9; Booth, Dkt. 62 at 8; Van Buren, Dkt. 67 at 3-4.) Defendant Lemisch further argues that Plaintiff's claims are vague and conclusory and fail to state a claim upon which relief can be granted. (Dkt. 53 at 9-11.) Defendant Lemisch also contends that Plaintiff's claims against him are barred by prosecutorial immunity and qualified immunity. (Dkt. 53 at 11-14.) Defendants Booth and Van Buren also assert that they are entitled to qualified immunity. (Dkt. 62 at 8-10; Dkt. 67 at 9-12.)

Defendant Shepardson contends that Plaintiff's defamation claim against him is barred by Michigan's one-year statute of limitations. (Dkt. 52 at 1-5; Compl. ¶¶ 36, 115, 116.)

Defendant Van Buren also contends that Plaintiff's allegations that her transfer to another institution was retaliatory and resulted in her being late in meeting deadlines must be dismissed for failure to exhaust administrative remedies. (Dkt. 67 at 4-5.) Defendant Van Buren also asserts that she does not have sufficient "minimum contacts" with the forum state for personal jurisdiction to be asserted over her. (Dkt. 67 at 6-9.)

Defendants Chubb, Mears, Kindrow, Coleman and Sergeant Johnson ("Wayne County Defendants") contend that the complaint against them should be dismissed for Plaintiff's failure

to serve them within 120 days after filing the complaint as required by FED. R. CIV. P. 4(m). (Dkt. 69 at 2-3.)

## C.    Motion Standards

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a case where the complaint fails to state a claim upon which relief can be granted.   To determine whether a complaint fails to state a claim and is therefore subject to dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must view the complaint in a light most favorable to the plaintiff, accepting as true all well-pled factual allegations.  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co*., 508 F.3d 327, 336 (6th Cir. 2007) (citing *United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993)).  The court need not accept as true legal conclusions or unwarranted factual inferences contained in the pleadings.  *Id*. (citing *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).  To survive the motion, "the complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory."  *Id*. (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

Where a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney.  *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999).  However, courts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), nor may courts construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993).  Neither may the court "conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), nor create a claim for Plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975), because to hold otherwise would require the court

"to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will

rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The elements of a claim under 42 U.S.C. § 1983 are: (1) the violation of a right secured by the federal Constitution or federal law that was (2) committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). The same analysis applies to federal actors under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971); *Baranski v. Fifteen Unknown Agents*, 452 F.3d 433, 438 (6th Cir. 2006)(en banc). Defendant Lemisch is a federal actor; the remaining named governmental defendants are state actors.

**D.      Analysis & Conclusions**

**1.      Individual Versus Official Capacity - Defendants Lemisch, Booth & VanBuren**

Defendants Lemisch, Booth and Van Buren argue that although the case caption indicates that the defendants are being sued in both their individual and official capacities, official capacity

suits are barred by Eleventh Amendment or sovereign immunity. (Dkt. 53 at 8-9; Dkt. 62 at 8; Dkt. 67 at 3-4.) Defendants are correct that a claim for money damages against a federal officer in his official capacity is barred by sovereign immunity. *Ecclesiastical Order of the Ism of Am v. Chasin*, 845 F.2d 113, 115-16 (6th Cir. 1988) (*Bivens*). Defendants are also correct that a claim for money damages against a state officer in his official capacity is barred by the Eleventh Amendment, absent the state's consent to suit. *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) (§ 1983); *Cowen v. University of Louisville School of Medicine*, 900 F.3d 936, 940 (1990). Therefore, any claims brought against the state or federal actors in their official capacities are barred by sovereign immunity. The remaining analysis will apply to the individual capacity suits against these governmental actors.

### 2. Service of Process - Wayne County Defendants

The Wayne County Defendants contend that the complaint against them should be dismissed for Plaintiff's failure to serve process within 120 days after filing the complaint as required by Rule 4(m) of the Federal Rules of Civil Procedure. (Dkt. 69 at 2-3.) The original complaint was filed on February 28, 2005, and the amended complaint on April 18, 2005. (Dkts. 7, 18.) Defendant Coleman filed a waiver of service on August 31, 2007 (Dkt. 51), Defendant Chubbs filed a waiver of service on September 17, 2007 (Dkt. 60), and Defendants Kindrow and Sergeant Johnson filed waivers of service on August 13, 2007. (Dkts. 41, 42.) Counsel for the Wayne County Defendants filed an appearance and motion to dismiss on September 28, 2007. (Dkts. 70, 71.)

Under Rule 4(m), if a plaintiff fails to properly serve a defendant, "the court shall dismiss the action without prejudice as to the defendant or direct that service be effected within a specified time." FED. R. CIV. P. 4(m). In the instant case, however, Plaintiff was not responsible for service

of process. Although service was not accomplished in 120 days from the filing of either the original or amended complaint, service was accomplished upon the Wayne County Defendants pursuant to the Court's Order entered on July 6, 2007. (Dkt. 34.) I suggest that service was properly accomplished as sanctioned by the Court and that Defendants have not been prejudiced by any delay. Therefore, I suggest that this case should be resolved on the merits and that dismissal without prejudice is inappropriate in this case. *Jacobs v. University of Cincinnati*, 189 F.R.D. 510, 511 (S.D. Ohio 1999) (noting that Rule 4 should be liberally construed when defendant is not prejudiced and favoring resolution on the merits); *Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir. 1987) (requirements of Rule 4 should be liberally construed where defendant is not prejudiced).

### 3. FTCA Exhaustion - Defendant United State of America

Plaintiff has alleged that Defendant AUSA Lemisch committed the tort of defamation. Defendant asserts that Plaintiff has failed to comply with the FTCA's requirement that she first present her claim to the appropriate federal agency and be denied relief by that agency before filing a lawsuit. (Dkt. 54 at 2-3.) Defendant U.S. further argues that this defect cannot be waived nor can the case be held in abeyance because it is a jurisdictional prerequisite. (Dkt. 54 at 2-3 (citing *McNeil v. United States,* 508 U.S. 106 (1993); *Rogers v. United States*, 675 F.2d 123 (6th Cir. 1982); *Garrett v. United States*, 640 F.2d 24 (1981)).

It is settled law that where administrative exhaustion is prescribed by statute as a prerequisite to the district court's jurisdiction, as is the case with the FTCA, 28 U.S.C. § 2675(a),[7]

---

[7]The relevant provisions of this section provide that:

(a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate

a failure to exhaust precludes the court from taking jurisdiction of the case. *See Singleton v. United States*, 277 F.3d 864, 872 (6th Cir. 2002) (stating that "we have held that the failure to file a timely administrative claim under the FTCA bars federal jurisdiction"). *See also* 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (2d ed.1990). There is no indication that Plaintiff undertook the required administrative proceedings. I therefore suggest that Plaintiff's claim against the U.S. as substituted for Defendant Lemisch is barred under the FTCA.

### 4.    Prosecutorial Immunity - Defendant Lemisch

Absolute prosecutorial immunity protects the acts falling within a prosecutor's role as advocate. *Manetta v. Macomb County Enforcement Team*, 141 F.3d 274, 279 (6th Cir. 1998); *Ireland v. Tunis*, 113 F.3d 1435, 1445 (6th Cir. 1997). "Prosecutors are entitled to absolute immunity for 'initiating a prosecution and . . . presenting the state's case." *Lomaz v. Hennosy*, 151 F.3d 493, 498 (6th Cir. 1998) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)). This immunity extends to all decisions to prosecute except those "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification," *Wayte v. United States*, 470 U.S. 598, 608, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978)).

Plaintiff contends that Defendant Lemisch used evidence he knew to be false against Plaintiff and slandered her in court. (Compl. ¶ 88.) Applying these standards to Plaintiff's allegations, I suggest that Defendant Lemisch is entitled to absolute prosecutorial immunity and

---

Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. . . .

should be dismissed from the case. *Peay v. Ajello*, 470 F.3d 65, 68 (2d Cir. 2006) (prosecutor alleged to have conspired to deprive § 1983 plaintiff of constitutional rights by fabricating evidence used at trial, suborning perjury, and intimidating plaintiff into pleading guilty was entitled to absolute prosecutorial immunity).[8]

### 5. Statute of Limitations for Defamation - Shepardson, Lemisch, and Booth

Defendant Shepardson argues that Plaintiff's defamation claim is barred by Michigan's one-year statute of limitation. (Dkt. 52 at 1-5.) The statute of limitations for civil rights actions under 42 U.S.C. § 1983 is defined by state law. *Wilson v. Garcia*, 471 U.S. 261, 280, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985). Under Michigan law, defamation claims (libel and slander) are to be brought within one year of the alleged conduct. MICH. COMP. LAWS § 600.5805(9). Here, the story of which Plaintiff complains was published by the Detroit Free Press on July 15, 2002. (Dkt. 52, Ex. B; Compl., Dkt. 7 ¶ 86.) Plaintiff did not file her original application to proceed *in forma pauperis* in this case until December 14, 2004. (Dkt. 1.) Therefore, I suggest that Defendant Shepardson is correct that Plaintiff's claim against him is barred by the applicable one-year statute of limitations.

Although not argued by Defendants Lemisch or Booth, the above reasoning applies to the slander claims against them as well. Plaintiff avers that Defendants Lemisch and Booth "slandered" her in court. (Am. Compl., Dkt. 7 ¶¶ 87- 88.) Plaintiff pleaded guilty to aiding and abetting a bank robbery and possession of a firearm in furtherance of a bank robbery on January of 2002. (Dkt. 53 at Ex. 1.) Any alleged slander committed by Defendants Lemisch or Booth in court must have occurred either before or during January of 2002. Consequently, any defamation

---

[8]Based on this conclusion, this Report does not address Defendant Lemisch's further argument that Plaintiff's allegations are too vague and conclusory to survive. (Dkt. 53 at 9-11.)

claims against Defendants Lemisch or Booth are untimely under the one-year limitation period applicable in Michigan. MICH. COMP. LAWS § 600.5805(9).

Therefore, I suggest that all defamation claims against Defendants Shepardson, Lemisch, and Booth are untimely and barred by the statute of limitations.

### 6. *Heck v. Humphrey* - **Defendants Lemisch, Booth**

Defendants Lemisch and Booth contend that Plaintiff's claims are not cognizable because they challenge the validity of her conviction and thus are barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). (Dkt. 53 at 7-8; Dkt. 62 at 7.) The allegations against Defendant Lemisch are that he falsified evidence and slandered Plaintiff in court and the allegations against Defendant Booth are that he presented false evidence and false statements in court. (Dkt. 7, Compl. ¶¶ 87-88.)

Generally, suits challenging the fact or duration of confinement must be brought under the habeas corpus statutes and not § 1983. *Preiser v. Rodriguez*, 411 U.S. 475, 489-90, 93 S. Ct. 1827, 1836 (1973). In *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), the U.S. Supreme Court considered whether this rule should be modified where a prisoner does not seek release but instead seeks an award of monetary damages. The Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87. This "favorable termination" rule bars § 1983 claims that "would necessarily imply the invalidity" of a prior conviction or sentence that has not been overturned. *Id.* at 487. However,

if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* (emphasis in original).

"While *Heck* concerned an action brought under 42 U.S.C. § 1983, we adopt the rule espoused by the Fifth and Eleventh Circuits that the *Heck* holding applies equally to an action brought under *Bivens*." *Robinson v. Jones*, 142 F.3d 905, 906-07 (6th Cir. 1998). *See also Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995) ("Given the similarity between suits under § 1983 and *Bivens*, [] *Heck* should apply to *Bivens* actions as well").

In the instant case, Plaintiff alleges that Defendants Lemisch and Booth falsified evidence that resulted in her conviction. I suggest that these allegations seek to undermine the validity of her conviction and thus, are barred by *Heck*. *See Abella v. Rubino*, 63 F.3d 1063, 1064-65 (11th Cir. 1995) (holding that the plaintiff's claim that defendants "knowingly and wilfully conspired to convict him falsely by fabricating testimony and other evidence against him" was barred by *Heck*); *Perez v. Sifel*, 57 F.3d 503, 505 (7th Cir. 1995) (claims that defendants procured conviction by committing perjury, falsifying evidence, and withholding exculpatory evidence were barred by *Heck*); *Zhai v. Cedar Grove Municipality*, 183 Fed. App'x. 253, 255 (3rd Cir. 2006) (allegations that "the officers, prosecutor, and judge conspired to bring false charges to secure a release for any civil liability resulting from the incident . . . are barred, along with her challenges to the guilty plea itself, by *Heck*"); *Hundley v. Ziegler*, No. 07-848, 2007 WL 2345285,*4 (W.D. Pa. Aug. 16, 2007) ("Plaintiff is attempting to establish that the defendants conspired against him to falsely convict him due to their alleged racial animus . . . success in establishing such would necessarily render his convictions or sentences invalid" and thus, are barred by *Heck*); *Banko v. Brooks*, No. Civ. A. 06-946, 2006 WL 3227761, *5 (W.D. Pa. Nov. 2, 2006) ("Because success in establishing that the

Defendants conspired to falsely convict him, lying in the course of the criminal proceedings and committing perjury concerning Plaintiff's status as a confidential informant, would necessarily render his convictions or sentences invalid, the reasoning of *Heck*, renders his claims non-cognizable in this civil rights action absent an invalidation of those convictions"); *First Black American President v. Taylor,* No. 4:06-CV-49, 2006 WL 2530400, *1 (W.D. Mich. Aug. 31, 2006) (where plaintiff asserted "a due process claim based upon [defendant's] alleged use of false evidence or information to obtain [plaintiff's] conviction, *Heck* also precludes such a claim").

I further suggest that the result would be the same if analyzed under the doctrine of collateral estoppel.[9] "The decision of a federal court is entitled to collateral estoppel effect if the following elements are satisfied: '(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.'" *Smith v. S. E. C.*, 129 F.3d 356, 362 (6th Cir. 1997) (quoting *Detroit Police Officers Ass'n v. Young*, 824 F.2d 512, 515 (6th Cir. 1987)).

In the instant case, Plaintiff's appeal challenged her conviction on the grounds that the government used illegal tactics to obtain confessions from her co-defendants in order to force her to plead guilty. (Dkt. 53, Sixth Circuit Opinion at Ex. 1.) The Sixth Circuit held that Plaintiff's plea was knowing, intelligent and voluntary, and that Plaintiff was "not entitled to relief on her claims that the government used illegal tactics to obtain her conviction and to force her co-

---

[9]When collateral estoppel is raised to potentially bar litigation of an issue decided by a different forum, the court will use the other forum's law to determine the issue of collateral estoppel. *See McAdoo v. Dallas Corp.*, 932 F.2d 522, 524 (6th Cir. 1991). Since the instant Plaintiff was convicted by this forum, federal law applies.

defendants to confess" because the "validity of the guilty plea means that Washington has waived any non-jurisdictional defects in her conviction." (Dkt. 53, Ex. 1 at 3.) I suggest that the precise issue raised in this § 1983 claim has been fully and fairly litigated and that collateral estoppel applies to preclude the instant action. *Smith, supra.*

Therefore, I suggest any and all claims regarding the presentation or use of false evidence or false statements in court should be dismissed as barred by *Heck v. Humphrey*. I therefore suggest that Defendants Lemisch and Booth should be dismissed from this suit on this ground.

### 7. Exhaustion of Administrative Remedies - Defendant Van Buren

Defendant Van Buren contends that Plaintiff failed to exhaust administrative remedies with respect to the alleged retaliatory transfer. (Dkt. 67 at 4-5.)

Prisoner civil rights cases are subject to the Prison Litigation Reform Act's ("PLRA") mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Suits "brought with respect to prison conditions" includes "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). To exhaust a claim, a prisoner must proceed through all of the steps of a prison or jail's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because

no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 2386.

The Supreme Court provided further clarification of the PLRA's exhaustion rule in *Jones v. Bock*, ___ U.S. ___, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). The Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in their complaint, holding instead that failure to exhaust is an affirmative defense. *Id.* at 921. The Court further held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but **it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion**." *Jones,* 127 S. Ct. at 922-23 (emphasis added). There is no futility exception to the exhaustion requirement. *Booth v. Churner,* 532 U.S. 731, 741, n. 6, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001).

The Bureau of Prisons has a three-step administrative remedy process which all prisoners must exhaust before filing suit in federal court. 28 C.F.R. § 542.13-15 (2006). Federal prisoners must first attempt an informal resolution by presenting "an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). "The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). "An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a).

Defendant asserts that Plaintiff did not even attempt to exhaust her administrative remedies regarding the claims that Defendant Van Buren transferred her in retaliation for grievances filed, that she was transferred to a higher security prison even though her medical status and a recommendation from the sentencing judge suggested housing Plaintiff at FMC Carswell, and that because she was transferred her mail was delayed, missing important legal deadlines. (Dkt. 67 at 5; Am. Compl. ¶ 89.) Defendants attach an unsworn declaration, under penalty of perjury, from Alberto Munguia, Supervisory Attorney at the Federal Medical Center ("FMC") Carswell, indicating that Plaintiff was incarcerated at FMC Carswell from June 20, 2002, until May 5, 2004. (Dkt. 67, Ex. 2 ¶¶ 1-2.) Mr. Munguia further attests that a "review of records reveal plaintiff has not filed a BP-9 at the institutional level concerning any of the claims she asserts against Warden Van Buren. Moreover, plaintiff has not asserted any claims at the Regional or Central Office levels concerning the claims alleged against defendant Van Buren." (*Id.* ¶6.) Plaintiff has not countered this assertion. Therefore, I suggest that Defendant Van Buren is entitled to summary judgment based on Plaintiff's failure to exhaust administrative remedies.

I further suggest that even if Plaintiff had exhausted administrative remedies, her complaint fails to state a retaliation claim upon which relief can be granted. A First Amendment retaliation claim consists of the following elements: (1) the plaintiff was engaged in a constitutionally protected conduct; (2) the defendant's adverse action would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between elements one and two, i.e., the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc); *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004). However, conclusory allegations of retaliatory motive unsupported by any specific factual foundation are insufficient to state a claim under § 1983. *See Harbin-Bey*

*v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Lanier v. Bryant*, 332 F.3d 999, 1007 (6th Cir. 2003); *Pack v. Martin*, 174 Fed. App'x 256, 259 (6th Cir. 2006); *McMillan v. Fleming*, 136 Fed. App'x 818, 820-21 (6th Cir. 2005). Where the alleged retaliatory conduct began before the plaintiff engaged in protected speech, no retaliatory claim can be established. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977).

Here, the Plaintiff's filing of non-frivolous grievances is protected conduct under the First Amendment. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf"). However, I suggest that Plaintiff has not stated facts that could support either the second or third elements of a retaliation claim.

I suggest that this transfer to another facility is not adverse conduct. Transfer to the general population of another prison facility, absent foreseeable consequences that the transfer would interfere with Plaintiff's access to the courts or some other fundamental right, is not considered sufficiently adverse action to deter a person of ordinary firmness from exercising his First Amendment rights. *Hix v. Tennessee Dep't of Corr.,* 196 Fed. App'x 350, 358 (6th Cir. 2006); *Smith v. Yarrow*, 78 Fed. App'x 529, 543 (6th Cir. 2003); *Jewell v. Leroux*, 20 Fed. App'x 375, 377-78 (6th Cir. 2001) (finding no adverse action where plaintiff alleged he had been wrongfully removed from a prison job and transferred to another prison in retaliation for filing prison grievances); *Mandela v. Campbell*, No. 97-5712, 1999 WL 357825, *3 (6th Cir. May 26, 1999); *Poindexter v. McKee*, No. 5:05 CV 65, 2006 WL 322480, *2 (W.D. Mich. Feb. 10, 2006).[10] Here,

---

[10]Transfer to administrative segregation would likely be considered adverse but that is not the situation presented in this case. *Mandela*, *3 (citing *Thaddeus-X, supra*). I also note that is it constitutionally permissible for prison authorities to transfer an inmate to another facility to simply give prison staff a respite from a prisoner's grievances. *Ward v. Dyke*, 58 F.3d 271, 274-75 (6th Cir. 1995).

although Plaintiff does allege that, because of the transfer, she was unable to receive her mail and was "late on important legal deadlines, which required a response,"she does not assert that her paperwork was rejected by the court as untimely or that she suffered any adverse consequences, or that her access to the courts was interrupted in any manner. (Dkt. 7 ¶ 89.) Therefore, I suggest that she has not sufficiently alleged that the transfer was adverse conduct.

I further suggest that Plaintiff's conclusory allegations of retaliation are unsupported by any specific factual foundation and are insufficient to state a claim of retaliation. *Harbin-Bey; Lanier, supra.*

I therefore suggest that summary judgment be granted in favor of Defendant Van Buren because Plaintiff failed to exhaust administrative remedies and because Plaintiff's complaint fails to state a claim upon which relief can be granted for retaliation.[11]

### 8. Qualified Immunity - Lemisch, Booth, and VanBuren

Defendants Lemisch, Booth, and Van Buren assert that they are entitled to qualified immunity. (Dkt. 53 at 12-14; Dkt. 62 at 8-10; Dkt. 67 at 9-12.) The Supreme Court has explained that, pursuant to the defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes

---

[11]Based on this conclusion, this Report does not address Defendant Van Buren's alternative argument that she does not have sufficient minimum contacts with the forum state for personal jurisdiction to be asserted over her. (Dkt. 67 at 6-9.)

that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

The Supreme Court has recently clarified the interplay between qualified immunity and summary judgment:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts. As we have emphasized, '[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."' '[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.' When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of the events is so utterly discredited by the record that no reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, ___ U.S. ___, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).

According to this recent Supreme Court precedent, courts must weave the summary judgment standard into each step of the qualified immunity analysis and must not proceed to step two unless a genuine issue of fact exists under step one. The Sixth Circuit has delineated the following steps to the qualified immunity analysis:

> The first inquiry is whether the [p]laintiff has shown a violation of a constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated the right; and the third inquiry is 'whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of clearly established rights.'

*Tucker v. City of Richmond, Ky,* 388 F.3d 216, 219 (6th Cir. 2005) (quoting *Higgason v. Stephens*, 288 F.3d 868, 878 (6th Cir. 2002)). At times, this Circuit employs a two-part test, *see, e.g., Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002). The three-part test simply adds the summary judgment language requiring evidence to support the claim and encompasses the rule that when the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). However, as noted earlier, *Scott v. Harris* requires that the summary judgment analysis permeate each step, including step one. In doing so, the court must only consider the facts known to the officers at the time the conduct was undertaken. *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005).

Since earlier in this Report I recommended that no claims against Defendants Lemisch, Booth, or Van Buren should survive, I suggest that Plaintiff has not proven a constitutional violation. Even if she could, I would suggest that any right is not so clearly established that a

reasonable officer would have realized his actions violated the constitution. *Tucker, supra*. Therefore Defendants Lemisch, Booth, and Van Buren would be entitled to qualified immunity and thus entitled to dismissal or summary judgment.

### 9.    Conclusion

For the reasons stated above, I recommend that dismissal or summary judgment be granted in favor of Defendants U.S., Shepardson, Lemisch, Booth, and Van Buren, and that the complaint against them be dismissed with prejudice. I further recommend that the motion to dismiss filed by Defendants Chubbs, Coleman, Mrs. Johnson, Kindro, and Mears be denied, as I conclude that they were properly served.


## III.    <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                    s/ Charles E Binder
                                    CHARLES E. BINDER
Dated: March 19, 2008               United States Magistrate Judge

24

## **CERTIFICATION**

      I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Peter A. Caplan, Laurie J. Michelson, and James M. Surowiec, and on Leslie Washington by first class mail, and served on U.S. District Judge Lawson in the traditional manner.


Date:  March 19, 2008        By     s/Patricia T. Morris            
                                        Law Clerk to Magistrate Judge Binder