# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

LESLIE WASHINGTON,

      Plaintiff,

v.

BURKS, Correctional Officer, Wayne
County;[1] JOHNSON, Sergeant, Wayne
County Jail; MRS. CHUBBS, Correctional
Officer, Wayne County Jail; MRS. COLEMAN,
Correctional, Wayne County Jail; MRS.
JOHNSON, Correctional Officer,[2] Wayne
County Jail; MRS. KINDRO, Correctional
Officer, Wayne County Jail; MRS. MEARS,
Correctional Officer, Wayne County Jail,[3]

      Defendants.

_____/

CASE NO. 04-CV-10352

DISTRICT JUDGE DAVID LAWSON
MAGISTRATE JUDGE CHARLES E. BINDER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
## WAYNE COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Dkt. 136)

## I.    RECOMMENDATION

───────────────────────

[1]Defendant Burks, Wayne County Officer, was erroneously omitted from the caption and terminated from the case. Although the previous Report and Recommendation ("R&R") recommended that the complaint be served on Mrs. Burks (Dkt. 32 at 7), the Order adopting the R&R in its entirety omitted Mrs. Burks (Dkt. 33), and the resulting Order to Correct Case Caption (Dkt. 55) mistakenly terminated her from the case. Since she was terminated due to a mere clerical error, she is included in the caption here.

[2]There has been some confusion because the earlier R&R suggested that Defendant Johnson be served, without specifying which one or both of the potential "Johnsons" should be served. (Dkt. 32.) The Order adopting that R&R specifically called for service to be made on both Sergeant Johnson and Deputy (Officer) Johnson. (Dkt. 33.) Accordingly, an Order on Motion Requesting Clarification was filed on November 28, 2007, directing the Marshals to serve process on Officer Johnson. (Dkt. 81.) Therefore, Officer Johnson remains a party to this suit.

[3]The caption originally included a Mrs. Barrone who was originally identified as Mrs. Bagne but her name was changed in the caption by an Order to Correctly Identify Defendant filed September 11, 2007. (Dkt. 55.) An Order adopting the R&R recommending she be dismissed from this lawsuit was adopted by Judge Lawson on October 20, 2008. (Dkt. 145.) Therefore, she is no longer a party to this lawsuit.

For the reasons set forth below, **IT IS RECOMMENDED** that the motion for summary judgment be **GRANTED** and that the case be **DISMISSED WITH PREJUDICE**.

## II.    REPORT

### A.    Introduction

Plaintiff Leslie Washington is a federal prisoner who is currently incarcerated at the Federal Correctional Institution in Dublin, California.  In December 2004, Plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  The events giving rise to this action occurred at the Wayne County Jail in Detroit, Michigan.  (Compl. ¶ 2.)  The 14-count 126-paragraph complaint originally named 49 defendants and alleged a number of horrific events which Plaintiff claims were part of Defendants' conspiracy to have her "accidentally eliminated or murdered."  (Compl., Dkt. 7 ¶ 48.)  On April 18, 2005, Plaintiff "supplemented" the Complaint beginning at paragraph 127. (Dkt. 18.)

On February 24, 2005, United States District Judge David M. Lawson referred all pretrial matters to the undersigned magistrate judge.  (Dkt. 5.)  This case has a lengthy procedural history which need not be reiterated here.  Suffice it to say that several previous Reports and Recommendations have been issued and Orders have been entered resulting in the dismissal of various defendants.  (Dkts. 32, 33, 35, 114, 123, 125, 133, 145.)  The above caption accurately reflects the remaining defendants in this case.

Defendants filed the instant motion for summary judgment (Dkt. 136) and Plaintiff responded.  (Dkt. 144.)  Upon review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), these motions are ready for Report and Recommendation without oral argument.

**B.      Remaining Claims**

Plaintiff's remaining allegations against the Wayne County Defendants that are alleged to have occurred after November 29, 2001,[4] are as follows:

1.      Defendant Sergeant Johnson

a.      On October 31, 2001, Defendant Sergeant Johnson locked Plaintiff down for almost a week even though Plaintiff was not at fault for the attack and was later found not guilty. (Compl., Dkt. 7 ¶ 66.)

b.      On December 6, 2001, Sergeant Johnson purposefully placed Carmen Baffield, Plaintiff's enemy, in Plaintiff's cell.  (*Id.* ¶ 71.)

2.      Defendant Mrs. Chubbs

a.      On December 8, 2001, Defendant Chubbs refused to let Plaintiff out of her cell to use the phone or shower and did not provide clean bed linens or a change of clothes even though Plaintiff was "not on discipline" and should not have been locked down.  (*Id.* ¶ 73.)  Defendant Sergeant Johnson confirmed Plaintiff was not on lock-down and "[l]ater that night, Sergeant Johnson told [Defendant Chubbs] to let me out, but she only let me out for a phone call." (*Id.*)

b.      On December 8, 2001, Defendant Chubbs watched as inmate Jackson attacked Plaintiff by hitting her in the head with the payphone while Plaintiff was using it and as the inmate "hung up on [Plaintiff's] mother." (*Id.* ¶ 74.)  Defendant Chubbs "refused to make a report, or get [Plaintiff] any medical attention." (*Id.*)

---

[4]As noted by Defendants, an Order entered on May 15, 2008, limits Plaintiff's claims to those arising after November 29, 2001, based on the relevant statute of limitations. (Dkt. 123 at 4.)

c.      Defendant Chubbs "would slide food under the cell door . . . [which] had dried blood and feces all along the bottom . . . and was infested with roaches which contaminated [Plaintiff's] food." (*Id.* ¶ 76.)

3.      Defendant Mrs. Mears

a.      Defendant Mears "would slide food under the cell door . . . [which] had dried blood and feces all along the bottom . . . and was infested with roaches which contaminated [Plaintiff's] food." (*Id.* ¶ 76.)

b.      On December 18, 2001, Defendant Mears called Plaintiff "a bitch and was fussing about the grievances [Plaintiff] wrote" and Defendant Mears "flicked the lights in [Plaintiff's] cell off and on hundreds of times, and blasted loud music in [Plaintiff's] cell." (*Id.* ¶ 77.)

c.      On January 20, 2002,[5] after Plaintiff had returned from the hospital and was placed in a cell in the mental health unit, Defendant Mears told Plaintiff "they were out of blankets, towels, and bed linen" so Plaintiff "was given a garbage bag [that she] used to try to keep warm" on "one of the coldest days of the year." (*Id.* ¶ 79.) Plaintiff was informed by another officer the next day that linens and blankets had been available. (*Id.*)

4.      Defendant Mrs. Coleman

a.      On February 9, 2002, Defendant Coleman told Plaintiff she "had better stop saying Officer Jones smoked marijuana in the booth before she loses her job, and [Plaintiff] is made to regret [her] actions." (*Id.* ¶ 80.)

b.      On April 17, 2002, Defendant Coleman "forced [Plaintiff] to sleep on the ground floor in bugs and filth, . . . removed [Plaintiff's] bed from the bottom bunk, refused to comply with [Plaintiff's] medical pass, . . . placed [Plaintiff's] linen and mat on the floor, [and] [s]he gave

---

[5]It is assumed that Plaintiff intended 2002, although the complaint reads 2001.

[Plaintiff's] bed to another inmate[.]" (*Id.* ¶ 82.) Defendant Coleman further "endangered [Plaintiff's] life when she allowed several inmates to con her into coming on the ward and dancing the Detroit Hustle for about an hour while they made a drug transaction." (*Id.*)

5.    Defendant Mrs. Kindro

a.    Defendant Kindro "would slide food under the cell door . . . [which] had dried blood and feces all along the bottom . . . and was infested with roaches which contaminated [Plaintiff's] food." (*Id.* ¶ 76.)

b.    On March 4, 2002, Defendants "Kindro and Johnson were discarding [Plaintiff's] mail." (*Id.* ¶ 81.)

c.    On May 25, 2002, Defendant Kindro placed inmate Tiffany in the same holding cell with Plaintiff, as Plaintiff awaited transportation to federal court for sentencing, despite the inmate's threats to kill Plaintiff which resulted in Plaintiff being kicked and hit by the inmate causing "a fat lip, and partial black eye." (*Id.* ¶ 84.)

6.    Defendant Mrs. Johnson

a.    Defendant Mrs. Johnson "would slide food under the cell door...[which] had dried blood & feces all along the bottom...and was infested with roaches which contaminated [Plaintiff's] food." (*Id.* ¶ 76.)

b.    Sometime after November 19, 2001, Defendant Johnson "would walk by [Plaintiff's] cell everyday, and say she hated [Plaintiff], wished [Plaintiff] was dead, and would curse and use profanity towards [Plaintiff]." (*Id.* ¶ 78.) Plaintiff was "heavily medicated" at the time with several "psychiatric medications." (*Id.*)

c.    On March 4, 2002, Defendants "Kindro and Johnson were discarding [Plaintiff's] mail." (*Id.* ¶ 81.)

7. Defendant Burks

a. Defendant Burks "would slide food under the cell door . . . [which] had dried blood and feces all along the bottom . . . and was infested with roaches which contaminated [Plaintiff's] food." (*Id.* ¶ 76.)

## C. Motion Standards

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine

whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The elements of a claim under 42 U.S.C. § 1983 are: (1) the violation of a right secured by the federal Constitution or federal law that was (2) committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). The same analysis applies to federal actors under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). *Baranski v. Fifteen Unknown Agents*, 452 F.3d 433, 438 (6th Cir. 2006) (en banc).

### D.    Analysis & Conclusions

Defendants assert that Plaintiff's allegations are untrue but that, for purposes of this motion, assuming that they are true, all allegations should be dismissed for failure to properly exhaust the claims. Defendants also contend that many of the claims could alternatively be dismissed for failure to state a claim upon which relief can be granted. (Dkt. 136 at 10.)

## 1. Exhaustion

Prisoner civil rights cases are subject to the Prison Litigation Reform Act's ("PLRA") mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Suits "brought with respect to prison conditions" include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). To exhaust a claim, a prisoner must proceed through all of the steps of a prison or jail's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999).

The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 91. The Supreme Court provided further clarification of the PLRA's exhaustion rule in *Jones v. Bock*, 549 U.S.199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). There, the Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in their complaint, holding instead that failure to exhaust is an affirmative defense. *Id.* at 921. The Court further held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but **it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion**." *Jones,* 127 S. Ct. at 922-23 (emphasis added). There is no

futility exception to the exhaustion requirement. *Booth v. Churner*, 532 U.S. 731, 741, n.6, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001).

In order to initiate a complaint or grievance in the Wayne County Jail, an inmate must request and fill out a "Wayne County Jail Inmate Grievance Form." (Dkt. 136 at Ex. 5, 6.) Defendants note that Plaintiff has previously filed numerous grievances and is very familiar with the process. Yet, the record in this case reveals no grievances filed on or after November 29, 2001, the earliest date that may be considered from the instant complaint. (Dkt. 136 at 12-13, Ex. B (index of grievances filed between August 22, 2001, and November 6, 2001).)

There is no record evidence that Plaintiff attempted to file grievances concerning any of the incidents said to support her allegations against these Defendants. Plaintiff instead counters with a chronology of events. She does not, however, specifically address exhaustion with respect to any of the claims listed above. Instead, she argues that she should not have to "divulge all of the evidence, and supporting documents during the initial phase" of her case. (Dkt. 144 at 4.) Neither the PLRA nor the cases construing this statute in this circuit provide support for this position. Moreover, even if this were true, this case has been pending for four years; it is far from its "initial phase." Finally, the summary judgment standard requires Plaintiff to make both a timely and a direct response to Defendants' exhaustion arguments. *See Street, supra*. She has failed to do so.

As Defendants noted, Plaintiff filed Recipients Rights Complaints with the Wayne County Community Mental Health Department regarding two of the relevant incidents alleged in the instant complaint. (Dkt. 136 at 13.) The Director of the Wayne County Jail, Jeriel Heard, indicated that a Recipient Rights Complaint Form is processed by Wayne County's Community Mental Health Department and involves a completely independent process from the grievance

procedures in the Wayne County Jail and would not provide notice to the Wayne County Sheriff's Grievance Administrator. (Dkt. 136 at Ex. 6, ¶¶ 3-6.)

I suggest that Plaintiff's filing of a Recipient Rights Complaint regarding any of the above allegations could not substitute for proper exhaustion. *See Shephard v. Wilkinson*, 27 Fed. App'x 526, 527 (6th Cir. Dec. 5, 2001) ("While Shephard asserts that he has raised his complaints in numerous letters to prison and public officials, a prisoner must utilize the formal grievance process provided by the state; he cannot comply with the requirements of § 1997e(a) by informally presenting his claims."); *Howell v. Leroux*, 20 Fed. App'x 375, 377 (6th Cir. Sept. 21, 2001); *Clark v. Beebe*, No. 98-1430, 1999 WL 993979, *2 (6th Cir. Oct. 21, 1999) (district court erred in holding that prisoner had substantially complied with exhaustion requirement by writing a letter to the U.S. Attorney that eventually made its way to the warden). Consequently, since Plaintiff has failed to seek redress through the administrative remedies available to her, I suggest that Defendants' motion for summary judgment be granted for failure to exhaust remedies.

### 2. Merits of Remaining Claims[6]

It is beyond dispute that, as a general proposition, an inmate's rights under the Eighth Amendment are violated when government entities or officials are deliberately indifferent to his or her medical needs or safety. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006). "Prison officials have an affirmative duty to protect inmates from violence perpetrated by other prisoners." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S. Ct. 1970, 128 L. Ed. 2d

---

[6]Although I believe that Plaintiff's failure to exhaust is alone sufficient to justify grant of the instant motion, in the interest of completeness and judicial economy on review, I will also address the merits.

811 (1994)). "Nonetheless, not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson*, 148 F.3d at 600. "'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) (citations omitted). "Mere negligence or malpractice is insufficient to establish an Eighth Amendment violation." *Bowman v. Corr. Corp. of Am.*, 250 F.3d 537, 544 (6th Cir. 2003).

"A prison official cannot be found liable . . . for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The Eighth Amendment is only concerned with "deprivations of essential food, medical care, sanitation," or "other conditions intolerable for prison confinement." *Rhodes v. Chapman*, 452 U.S. 337, 348, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

The Eighth Amendment does not give rise to a cause of action where the prisoner alleges only mental or emotional injury; physical injury must be alleged to survive dismissal. *Harden-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008); 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."). In addition, the alleged physical injury must be more than *de minimis* to support an Eighth Amendment claim. 42 U.S.C. § 1997e(e); *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999).

In the context of prison discipline, a plaintiff must prove an unnecessary and wanton infliction of pain or the infliction of pain without penological justification. *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). Under the objective inquiry in this context, the question is whether "contemporary standards of decency" have been violated. *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Id.* Thus, a prisoner need not prove a significant injury. *Moore v. Holbrook*, 2 F.3d 697, 701 (6th Cir. 1993). Under the subjective component, the inquiry involves "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). *See also Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008).

### a. Improper Lock Down Claims

This claim is brought against Defendant Sergeant Johnson and Defendant Chubbs. Plaintiff alleges that Defendant Sergeant Johnson improperly locked her down for almost a week and that Defendant Chubbs improperly locked her down for a day. (Compl., Dkt. 7 ¶¶ 66, 73.) Courts have held that much longer lock down periods than one day or one week do not violate the Eighth Amendment. *See Argue v. Hofmeyer*, 80 Fed. App'x 427, 429 (6th Cir. 2003) (confinement in cell for 23 hours a day, Monday through Friday, did not violate Eighth Amendment); *Polk v. Parnell*, 132 F.3d 33, 1997 WL 778511 (6th Cir. 1997) (unpublished) (improper placement in lock down for four days did not state a constitutional violation); *Taylor v. Smith*, 820 F.2d 1225, 1987 WL 37734 (6th Cir. 1987) (unpublished) (improper three day lock down did not state a claim for violation of the constitution); *Figueroa v. Dinitto*, 52 Fed. App'x 522, 523 (1st Cir. 2002)

(confinement with another inmate for 23-24 hours a day did not violate Eighth Amendment even if prisoner did not commit disciplinary infractions); *Williams v. Ramos*, 71 F.3d 1246, 1248-49 (7th Cir. 1995) (segregation unit where prisoner generally locked down and denied activities and handcuffed when permitted to leave did not violate Eighth Amendment); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994) (confining prisoners to cells 23 hours of the day did not violate Eighth Amendment absent other aggravating conditions); *Ruiz-Garcia v. Stine*, No. 6:07-427-DCR, 2008 WL 217121, at *2, n.3 (E.D. Ky. Jan. 24, 2008) ("Placement in segregation is a routine discomfort of prison life, and that action alone is insufficient to support an Eighth Amendment claim."); *Coleman v. Bradley*, No. 1:07-cv-468, 2007 WL 2461699, at *3 (W.D. Mich. Aug. 27, 2007) (confinement in cell from noon to midnight for 30 days did not violate the Eighth Amendment); *Bagetta v. Caruso*, No. 1:07-CV-289, 2007 WL 1577830, at *4 (W.D. Mich. May 30, 2007) (24-hour confinement in cell on weekdays did not violate Eighth Amendment); *Burnett v. Wilson*, No. 1:06 CV 2621, 2007 WL 437921, at *2 (N.D. Ohio Feb 7, 2007) (lock down for 23 hours per day for 35 days did not violate Eighth Amendment).

Accordingly, I suggest that Plaintiff has not stated an Eighth Amendment claim based on these allegations and that summary judgment in favor of these Defendants is proper.

### b.   Failure to Protect Claims

### i.   Enemies Placed in Cell

Plaintiff alleges that Defendant Sergeant Johnson purposefully placed Plaintiff's enemy in Plaintiff's cell and that Defendant Kindro placed another enemy of Plaintiff in the same holding cell with her as she awaited transportation to federal court for sentencing, despite the inmate's threats to kill Plaintiff.  (Compl., Dkt. 7 ¶¶ 71, 84.)  Plaintiff further alleges that Defendant

Kindro's decision resulted in Plaintiff being kicked and hit by the inmate causing "a fat lip, and partial black eye." (*Id.* ¶ 84.)

Even according to Plaintiff's own allegations, Sergeant Johnson's decision to place Plaintiff's enemy with her in the cell did not result in any assault, nor was Plaintiff harmed in any way. "However legitimate [the plaintiff's] fears may have been, we nevertheless believe that it is the reasonably preventable assault itself, rather than any fear of assault that gives rise to a compensable claim under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998). "[A] hypothetical risk of danger to [a prisoner's] safety prior to the attack" is insufficient to state an Eighth Amendment claim. *Lewis v. McClennan*, 7 Fed. App'x 373, 375 (6th Cir. 2001). Therefore, where an actual assault is not alleged, dismissal of an action for money damages is warranted. *Bristow v. Eleby*, No. 2:08-cv-0250, 2008 WL 3414132, at *3 (S.D. Ohio Aug. 8, 2008). Consequently, I suggest summary judgment in favor of Defendant Sergeant Johnson be granted as to this claim.

As to Plaintiff's claim that Defendant Kindro's placement resulted in her actually being assaulted, I suggest that Plaintiff has not sufficiently alleged an Eighth Amendment violation on the part of Defendant Kindro. Plaintiff has not specifically alleged how Defendant Kindro was "aware of facts from which the inference could be drawn that a substantial risk of harm exists" or that she drew that inference. *See Farmer*, 511 U.S. at 837. Although Plaintiff alleges that this enemy had threatened her life in the past, Plaintiff does not allege how Defendant Kindro would have been aware of that threat nor does Plaintiff allege any past violent conduct between Plaintiff and her enemy that would have put Defendant Kindro on notice of the risk of harm. Furthermore, if Defendant Kindro were aware of some risk of harm, Plaintiff was only placed in the same holding cell for a short period of time until her transportation to court was scheduled to arrive. I

therefore suggest that summary judgment be granted as to Defendant Kindro as to these claims. *Cf. Leary v. Livingston County*, 528 F.3d 438, 442 (6th Cir. 2008) (where Defendant told two inmates that Plaintiff had been charged with raping a nine-year-old girl and told Plaintiff there would be no protection from other inmates once they found out what Plaintiff did, summary judgment as to the failure to protect claim was denied because evidence showed Defendant was aware a substantial risk of serious harm existed).

### ii. Defendant Chubbs Witnessed Inmate Attack

Plaintiff also alleges that Defendant Chubbs watched as another inmate attacked Plaintiff by hitting her in the head with the payphone while Plaintiff was using it and as the inmate "hung up on [Plaintiff's] mother." (Dkt. 7 ¶ 74.) Plaintiff further contends that Defendant Chubbs "refused to make a report, or get [Plaintiff] any medical attention." (*Id.*)

First, with respect to Plaintiff's complaint that Defendant Chubbs did not make a report or otherwise pursue disciplinary actions against the assaultive inmate, I suggest that this allegation fails to state a claim upon which relief can be granted. "In American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 401 U.S. 614, 619, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (1973). Thus, "[t]he failure to conduct a full and fair investigation and prosecution of an alleged crime does not state a claim unless there is a violation of another recognized constitutional right." *Smallwood v. McDonald*, 805 F.2d 1036, 1986 WL 18183, at *1 (6th Cir. 1986) (unpublished).

However, as to the substance of Plaintiff's claim that Defendant Chubbs did not even attempt to stop an ongoing assault, "a correctional officer who observes an unlawful beating may, nevertheless, be held liable under § 1983 without actively participating in the unlawful beating."

*McHenry v. Chadwick*, 896 2d 184, 188 (6th Cir. 1990). Therefore, if this claim had been exhausted, I would suggest that it could survive summary judgment.

### c. Inhumane Conditions Claims

### i. Unclean Food Slot or Cell Door

Plaintiff alleges that Defendants Chubbs, Mears, Kindro, Mrs. Johnson, and Burks "would slide food under the cell door . . . [which] had dried blood & feces all along the bottom . . . and was infested with roaches which contaminated [Plaintiff's] food." (Dkt. 7 ¶ 76.)

Plaintiff has not alleged how any of the individual defendants were responsible for or caused the unclean conditions. It is beyond dispute that liability under § 1983 must be based on active unconstitutional behavior, not on a failure to act. *See Green v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998) (liability must be based upon active unconstitutional behavior). *See also Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) (stating that to establish personal liability of a government official under § 1983, a plaintiff must show that the official *caused* the deprivation of a federal right). I suggest that since there is no evidence that any of the named defendants caused the condition alleged, summary judgment is appropriate.

In addition, although Plaintiff has alleged that her wrapped food tray passed through an unclean area and that her food was thereby "contaminated," she has not provided any evidence of actual contamination of her food. In other words, Plaintiff has failed to offer proof that actual contamination occurred by passing the tray through the described environment and, even if she had, she has not alleged or proffered that the unclean area posed a "substantial risk of serious harm." *Farmer*, 511 U.S. at 834. In addition, the type of "contamination" here is not alleged to be an area contaminated by highly contagious diseases or other independent dangers. *Cf. Pittman*

*v. Kolb*, No. 07-14892, 2008 WL 2622949, at *4 (E.D. Mich. July 2, 2008) (Eighth Amendment claim alleging intentional exposure to serious communicable diseases, such as MRSA, via food tray delivery survived summary judgment).

I further note that Plaintiff has not alleged that she became sick or was otherwise affected by the condition of the food slot area. I therefore suggest that summary judgment is appropriate based on this lack of alleged or substantiated harm from the passage of the tray through the alleged unclean food slot area.

### ii.     Claims of Cold Cell, Lack of Blankets, and Being Forced to Sleep on the Floor

Plaintiff alleges that on one evening, Defendant Mears told Plaintiff "they were out of blankets, towels, and bed linen," so Plaintiff "was given a garbage bag [that she] used to try to keep warm" on "one of the coldest days of the year." (Compl. ¶ 79.) Plaintiff further alleges that she was informed by another officer the next day that linens and blankets had been available. (*Id.*) In addition, Plaintiff alleges that on another evening, Defendant Coleman "forced [Plaintiff] to sleep on the ground floor in bugs and filth, . . . removed [Plaintiff's] bed from the bottom bunk, refused to comply with [Plaintiff's] medical pass, placed [Plaintiff's] linen and mat on the floor [and] [s]he gave [Plaintiff's] bed to another inmate . . . ." (*Id.* ¶ 82.)

In considering inhumane conditions allegations, courts must look to the "circumstances, nature, and duration of the deprivation [to] determine whether [an Eighth Amendment] violation has occurred." *Spencer*, 449 F.3d at 728 (citations omitted). Absent evidence that plaintiff suffered a physical injury, deprivation of a mattress, blankets, or other bedding for a fixed period of time, such deprivation does not violate the Eighth Amendment. *Grissom v. Davis*, 55 Fed. App'x 756, 757 (6th Cir. 2003); *Wells v. Jefferson County Sheriff Dep't*, 35 Fed. App'x 142, 143 (6th Cir. 2002) (no Eighth Amendment violation where inmate slept on mattress on floor in cold

cell for 6 days); *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996)

("The defendants did not violate [plaintiff's] Eighth Amendment rights by depriving him of a

mattress for a two-week period."); *Stapleton v. Wilson*, No. 07-CV-218-KSF, 2007 WL 3120121,

at *1, 4-5 (E.D. Ky. Oct. 23, 2007) (inmates being forced to sleep on floor "with vermin" did not

state an Eighth Amendment violation); *Bean v. Monroe*, No. 2:04-CV-230, 2006 WL 625864, at

*5 (W.D. Mich. Mar. 9, 2006) (no Eighth Amendment violation where plaintiff was in cold cell,

dressed in gown, with no mat, mattress or blanket for three days). I therefore suggest that

Plaintiff's allegations that her cell was cold, she was deprived of a blanket and was on another

occasion forced to sleep on the floor do not rise to the level of an Eighth Amendment violation.

This is especially so where, as here, the alleged deprivations were for only one night.

"Short term deprivations of toilet paper, towels, sheets, blankets, toothpaste, toothbrushes and the

like do not rise to the level of a constitutional violation." *Siller v. Dean*, No. 99-5323, 2000 WL

145167, at *2 (6th Cir. Feb. 1, 2000). *See also Harris v. Fleming*, 839 F.2d 1232, 1234-35 (7th

Cir. 1986) ("The facts and circumstances [deprivation of toilet paper and roach-infested cell]

demonstrate some neglect and indifference on [defendant's] part, but the conditions were

temporary and affected only one inmate [who] experienced considerable unpleasantness, [but] he

suffered no physical harm . . . defendants' temporary neglect . . . did not reach unconstitutional

proportions")

I therefore suggest that summary judgment in favor of Defendants be granted regarding the

temperature of the cell, failure to provide a blanket, and being forced to sleep on the ground claims.

*See also Harris v. Hulkoff*, No. 2:05-cv-198, 2007 WL 2479467, at *3-4 (W.D. Mich. Aug. 28,

2007) (52-hour alleged intentional deprivation of blankets in cold cell was insufficient to avoid

summary judgment as to Eighth Amendment claim where no evidence cell was so cold as to pose

a serious health risk); *Cf. Spencer*, 449 F.3d at 729 (cold, wet conditions that persisted for months while officers failed to take reasonable measures to abate it, such as by providing adequate clothing and blankets, showed sufficient deliberate indifference to survive summary judgment).

### d. Derogatory Language and Harassment

Plaintiff alleges that Defendant Mears called Plaintiff "a bitch and was fussing about the grievances [Plaintiff] wrote," "flicked the lights in [Plaintiff's] cell off and on hundreds of times, and blasted loud music in [Plaintiff's] cell." (*Id.* ¶ 77.) Plaintiff further alleges that Defendant Coleman threatened that Plaintiff "had better stop saying Officer Jones smoked Marijuana in the booth before she loses her job, and [Plaintiff] is made to regret [her] actions." (*Id.* ¶ 80.) Finally, Plaintiff alleges that Defendant Johnson "would walk by [Plaintiff's] cell everyday, and say she hated [Plaintiff], wished [Plaintiff] was dead, and would curse and use profanity towards [Plaintiff]." (*Id.* ¶ 78.)

Although unprofessional and impolite, use of harassing or degrading language does not rise to constitutional dimensions. *See Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (unpublished). Accordingly, I suggest that Defendants Mears, Coleman, and Johnson are entitled to summary judgment on this claim.

### e. Discarding Mail

Plaintiff alleges that on one occasion, Defendants "Kindro and Johnson were discarding [Plaintiff's] mail." (Dkt. 7 ¶ 81.) "A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003). "[P]rison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied

policy with an eye to maintaining prison security." *Lavado v. Keohan*, 992 F.2d 601, 607 (6th Cir. 1993). "However, prison officials who open and read incoming mail in an arbitrary and capricious fashion violate a prisoner's First Amendment rights." *Sallier*, 343 F.3d at 873-74.

I note that there is no allegation that Plaintiff failed to receive any legal mail or that she was unable to timely respond to legal mail due to any alleged discarded mail. Since she has not alleged any "actual injury," she has not stated a claim for violation of the First Amendment right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 349-51, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); *Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999).

Throwing Plaintiff's mail away is an arbitrary and improper act, but Plaintiff's allegation of only one incident of such behavior fails to state a claim of constitutional dimension. *Davis v. Goord*, 320 F.3d 346, 351 (2nd Cir. 2003) ("an isolated incident of mail tampering is usually insufficient to establish a constitutional violation."); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (allegations that prison officials "repeatedly and intentionally withheld" a prisoner's mail may state a First Amendment claim but an "isolated" instance will not). Therefore, I suggest that summary judgment in favor of Defendants should be granted as to this claim as well.

**E.     Conclusion**

For all the reasons stated above, I suggest that Defendants' motion for summary judgment be granted and that the case be dismissed in its entirety with prejudice.


**III.   <u>REVIEW</u>**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474

U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596

(6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are

advised that making some objections, but failing to raise others, will not preserve all the objections

a party may have to this Report and Recommendation.  *McClanahan v. Comm'r of Social Security*,

474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich.

LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.


    s/ 𝒞harles 𝓔 𝐵inder

CHARLES E. BINDER

Dated: December 17, 2008          United States Magistrate Judge


### CERTIFICATION

    I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Peter A. Caplan, Laurie J. Michelson, and James M. Surowiec, and on Leslie Washington by first class mail, and served on U.S. District Judge Lawson in the traditional manner.


Date:  December 17, 2008     By    s/Patricia T. Morris

                      Law Clerk to Magistrate Judge Binder